IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **AVIVA AMERICA, INC.** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:08-CV-757-L** |
| | § | |
| **FRENCH'S WELDING AND** | § | |
| **MAINTENANCE SERVICES, LLC and** | § | |
| **FRENCH'S MARINE SERVICES, LLC,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants French's Welding and Maintenance Services, LLC's and French's Marine Services, LLC's Motion to Dismiss For Lack of Personal Jurisdiction and, in the Alternative, Motion to Dismiss for Failure to State a Claim, filed May 9, 2008. After careful consideration of the motion, briefs, record, and applicable law, the court **grants** Defendants French's Welding and Maintenance Services, LLC's and French's Marine Services, LLC's Motion to Dismiss for Lack of Personal Jurisdiction.

### I.    Procedural and Factual Background

This case is a contract dispute. Plaintiff Aviva America, Inc. ("Plaintiff" or "Aviva") filed its Original Petition for Declaratory Judgment and Damages against French's Welding and Maintenance Services, LLC and French's Marine Services, LLC ("Defendants" or "the French's Companies) on March 24, 2008 in the 191st Judicial District Court of Dallas County, Texas. The French's Companies removed the case to this court pursuant to 28 U.S.C. § 1441(a) (West 2008) on May 2, 2008. Aviva alleges claims for duress, conspiracy to commit duress, and in the alternative,

a claim for negligent misrepresentation. Plaintiff also seeks a declaratory judgment as to the amount Aviva owes to the French's Companies.

Plaintiff is a corporation organized under the laws of Delaware with its principal place of business in Dallas, Texas. Pl.'s Pet. at 2. Aviva asserts that Defendants are both limited liability companies organized under the laws of Louisiana with their principal places of business in Belle Chasse, Louisiana. *Id*. at 2-3. Plaintiff alleges that Defendants performed work for it and Harvest Group, LLC ("Harvest") related to oil and gas production. *Id*. at 3. According to Aviva, Defendants constructed and installed a gas pipeline to connect the Aviva and Harvest offshore platforms near Plaquemines Parish, Louisiana. *Id*. Around May 21, 2007, French's Marine Services, LLC allegedly submitted an estimate to Aviva for the cost of construction and installation of the pipeline. *Id*. at 4. Aviva contends it accepted the proposal with an estimated cost around $150,000. *Id*. Plaintiff also alleges that once the pipeline was completed, the French's Companies sent numerous invoices to its office in Dallas, Texas. *Id*. at 6. Plaintiff further alleges that it has been over-billed. *Id*. at 4. Plaintiff contends it received an invoice for approximately $273,000, nearly $123,000 more than the original estimate. *Id*.

Despite receiving numerous invoices and demands for payment, Plaintiff states it did not pay the balance for the work performed. *Id*. In late 2007, pursuant to Louisiana law, Defendants filed a lien against Aviva's property to recover the amount of the unpaid invoices. *Id*. at 8. Plaintiff states that the French's Companies served copies of the lien on it in Dallas, Texas and gave notice of the lien to Shell Trading Company ("Shell"), a purchaser of the hydrocarbons subject to the lien, in Houston, Texas. *Id*. Aviva further states that Defendants also sent notice of the lien to Plains Marketing, LP ("Plains Marketing") in Houston, Texas. *Id*. Plaintiff alleges that Defendants, by

law, were not entitled to file this lien, but nonetheless did so, and continued to make written demands to Shell asking it to withhold all revenue owed to Aviva for oil purchases. *Id*.

Defendants have now moved to dismiss Plaintiff's claims against them for lack of personal jurisdiction, and in the alternative, for failure to state a claim upon which relief can be granted. Defendants contend that neither of the French's Companies has the requisite minimum contacts with Texas to warrant this court's exercise of personal jurisdiction over them, and that therefore the court should dismiss Aviva's claims against them.

## II. Rule 12(b)(2) Standard for Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *Id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F.Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a

compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the

forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp.2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

### III.  Discussion

Minimum contacts may be established based on general jurisdiction or specific jurisdiction. *Marathon Oil*, 182 F.3d at 295. Aviva does not argue that the French's Companies have continuous, systematic, and substantial contacts with Texas that warrant general jurisdiction over them. Rather, Aviva argues that specific jurisdiction is proper because the French's Companies have contacts with Texas that arise from, or are directly related to, the causes of action.

Defendants contend that neither company has minimum contacts sufficient for a finding of specific jurisdiction. They argue that their contacts with Texas are limited and are, as alleged by Plaintiff, in total: "written communications by Defendants to Aviva, including Defendant's alleged misrepresentations regarding the costs estimates on which Aviva relied in entering into contractual relationships with each Defendant and communications by Defendants to other entities located in Texas with an alleged intent to unlawfully harm Aviva." Defs.' Mot. to Dismiss ¶ 27. Specifically, Defendants argue that the estimate, invoices, and notices of lien are not enough for a finding of specific personal jurisdiction. Plaintiff responds that Defendants' actions were aimed at the forum state and that Defendants sought action in Texas against it by sending notices of lien to two Texas companies.

A.  **The Estimate and Invoices**

The court turns first to the estimate and invoices Defendants sent to Aviva in Texas. Aviva argues that these contacts are sufficient to confer specific jurisdiction over Defendants. The French's Companies contend that they did not contact Aviva, but that Harvest, a Louisiana company, contacted them and inquired if they could construct and install the pipeline in Louisiana. The negotiations of the contract occurred between Harvest and the French's Companies in Louisiana, not between Aviva and the French's Companies. Defendants note that they sent the estimate to Harvest, who submitted it to Aviva, and that they sent the final invoices to Aviva in Dallas at the direction of Harvest.

A company may "reach out" to the forum state, but that does not necessarily mean it has "purposefully availed" itself of the benefits of the state's law like someone actually "doing business" in the forum. *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008) *cert. pet. filed,*

76 USLW 3611 (May 5, 2008); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) *cert. denied*, 481 U.S. 1015 (1987). Furthermore, communication between the nonresident defendant and the plaintiff "in the course of developing and carrying out the contract was in itself also insufficient to constitute purposeful availment of the benefits and protections of the forum state." *Id.* Purposeful availment of the privilege of conducting activities within the forum state required by the due process clause cannot be inferred from the "mere fortuity that one party happens to be a resident of the forum." *Patterson v. Dietze, Inc.,* 764 F.2d 1145, 1147 (5th Cir. 1985). In determining whether a nonresident defendant is subject to its jurisdiction, the court must "look to the factors of prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing to determine whether the nonresident defendant purposefully established minimum contacts with the forum." *Colwell Realty Invs., Inc. v. Triple T Inns of Arizona, Inc.*, 785 F.2d 1330, 1334 (5th Cir. 1986).

As stated in *Holt Oil*, merely contracting with a resident of the forum is not enough to confer specific jurisdiction over a defendant. The solicitation of the contract by Harvest, the negotiation of the contract terms, and the performance of the contract all occurred entirely in Louisiana. The initial estimate was sent to Harvest, who sent it to Aviva for its approval as well. The French's Companies did not have any direct contact with Aviva in Dallas, Texas until the job had been completed and the invoices had been mailed. That Defendants entered into a contract with Harvest, and incidentally, Plaintiff, to construct and install a pipeline in Louisiana does not mean they purposefully availed themselves of the benefits of doing business in Texas. Mailing invoices to

Texas after performance of a contract performed entirely in Louisiana does not constitute purposeful availment of the benefits and protections of Texas. It is nothing more than a mere fortuity that Aviva is a resident of Texas. The court concludes that mailing the estimate and invoices to Aviva in Texas based on a contract that was created and performed in Louisiana does not constitute minimum contacts necessary to establish a *prima facie* case of specific jurisdiction over Defendants.

B.     The Notices of Lien

Next, the court considers the notices of lien sent by Defendants to two Texas companies. Plaintiff alleges that specific jurisdiction can be exercised over Defendants because the effects of their tortious conduct was aimed at Texas because they filed a lien they had no legal right to file and by demanding that Texas companies withhold all payment of revenue to Plaintiff after the lien was filed. Defendants argue that it is nothing more than a mere fortuity that the companies who received notice of the lien are located in Texas. Defendants also argue that Plaintiff's reliance on the "effects" test of personal jurisdiction is misplaced because their filing of the lien was not tortious, but rather was simply their exercise of their legal rights. Defendants further allege that they did not direct Shell to withhold any money from Plaintiffs, but rather simply gave notice to it that a lien had been filed and allowed it to determine what action to take.

In tort cases, foreseeable injury based on the effects of an alleged tort is not sufficient to confer specific jurisdiction absent specific acts directed towards the forum. *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999); *see also Calder v. Jones,* 465 U.S. 783, 789 (1984). The "effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum." *Stroman Realty*, 513 F.3d at 486. In this circuit, courts have "declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the

alleged harm to a Texas resident." *Id.*; *see also Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). Allegations that relate only to the foreseeability of causing injury in Texas are "not a sufficient benchmark for specific jurisdiction." *Panda Brandywine,* 253 F.3d at 869. The "foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Id.* at 870; *see also Burger King,* 471 U.S. at 474. To conclude that a defendant should reasonably anticipate being haled into the forum state to answer for its tortious actions, the alleged tortfeasor's intentional actions must be "expressly aimed at the forum state and the tortfeasor must know that the brunt of the injury will be felt by a particular resident in the forum." *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 772 (5th Cir. 1988). Purposeful availment of conducting activities within or towards the forum state required by the due process clause cannot be inferred from the "mere fortuity that one party happens to be a resident of the forum." *Patterson,* 764 F.2d at 1147.

The effects of an alleged tort alone are insufficient for the court to exercise specific jurisdiction over a nonresident defendant. Plaintiff's contention that the language of the lien notice to Shell, "and ask that you act accordingly," proves Defendants aimed their tortious activities at Texas by requesting all revenues owed to be withheld is without support. Defendants gave notice of the lien to Shell pursuant to Louisiana law and asked that Shell take notice and act accordingly. Plaintiff provides no support for the contention that Defendants requested all revenues to be withheld or even requested that any revenue be withheld. The injury that Plaintiff suffered was caused by Shell, and not either of the Defendants. Defendants had no power to force Shell to

withhold over one million dollars owed to Plaintiff. Defendants merely gave Shell and Plains Marketing notice of the lien. Defendants' alleged tortious contacts with Texas are based on nothing more than the mere fortuity that Shell and Plains Marketing happen to be located in Texas. The French's Companies could not reasonably anticipate that filing and processing a lien pursuant to Louisiana law would lead to them being haled into a Texas court. The French's Companies did not expressly aim their actions at Texas. Defendants used lawful means to attempt to recover money that they were owed under a valid contract. Accordingly, the court concludes that Aviva has not established a *prima facie* case for specific personal jurisdiction over Defendants based on their alleged tortious conduct aimed at Texas.

Defendants' act of mailing the notices of lien to Texas does not meet the "effects" test and is insufficient to warrant the exercise of personal jurisdiction over them. For the reasons stated previously, Plaintiff has not made a *prima facie* case for the court's exercise of specific jurisdiction over Defendants. Because the court concludes that it lacks personal jurisdiction over Defendants, it does not reach Defendants' alternative motion to dismiss Plaintiff's claims for failure to state a claim or Defendants' request to transfer the case to Louisiana.

## IV. Conclusion

For the reasons stated herein, the court determines that Plaintiff has failed to make a *prima facie* case that it may exercise personal jurisdiction over Defendants. Accordingly, the court **grants** Defendants French's Welding and Maintenance Services, LLC's and French's Marine Services, LLC's Motion to Dismiss for Lack of Personal Jurisdiction and **dismisses without prejudice** this action against Defendants French's Welding and Maintenance Services, LLC and French's Marine Services, LLC.

**It is so ordered** this 31st day of July, 2008.

_____
Sam A. Lindsay
United States District Judge